UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **LYNDAL KIMBLE**, | ) | Case No. 4:08 CV 1048 |
| | ) | |
| Petitioner, | ) | Judge Sara Lioi |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| **RICHARD GANSHEIMER, WARDEN** | ) | (Regarding ECF #1) |
| | ) | |
| Respondent. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Lyndal Kimble has filed a petition under 28 U.S.C. §2254 for federal habeas corpus as a state prisoner. He was convicted in the Trumbull County, Ohio Court of Common Pleas on multiple drug trafficking related offenses both on February 15, 2005 and in April, 2005, and was sentenced to 3-years and 7½ years, respectively on July 13, 2005. (See Petition response to questions 2, 17); *State v. Kimble*, 2006 WL 3350483, 2006-Ohio-6096 (Ohio App. 11 Dist. Nov. 17, 2006); *Id.*, 2006 WL 3772223, 2006-Ohio-6863 (Ohio App. 11 Dist. Dec. 22, 2006). In the first case (03 CR 548) he entered into plea negotiation and entered guilty pleas to tampering with evidence and possession of cocaine. The second case (04 CR 525) went to trial, where he was partially acquitted. He was convicted, however, on charges of 8 counts of trafficking in cocaine, and 1 count of possession of cocaine.

In this petition he alleges that he is challenging his convictions in case 03 CR 548, but he states that he pleaded not guilty. (See Petition, question 6 and response). After reviewing both cases it is clear that the grounds raised in this matter for federal review are identical to the issues raised in case 03 CR 548 and in Kimble's appeal and application to reopen appeal from those convictions.

4:08 CV 1048                                              2

His response to question number 6 was in error. Kimble has not challenged the convictions and sentence relating to Case No. 04 CR 525 in this petition.

*Grounds raised:*

Kimble has exhausted his state remedies with respect to the four grounds raised in his petition for federal collateral review:

**GROUND ONE**: The trial court abused its discretion by denying appellant's motion to withdraw his guilty pleas.
Supporting Facts: The trial court abused its discretion by denying the defendant's presentence motion to withdraw his guilty plea where the record revealed that the defendant had received ineffective assistance of counsel.

**GROUND TWO**: The trial court's imposition of a sentence greater than the minimum term permitted by statute based upon finding not made by a jury.
Supporting Facts: The trial court erred by sentencing the defendant to serve term greater than the minimum term of incarceration permitted by law based upon certain factual findings that were not made by a jury nor admitted by the defendant.

**GROUND THREE**: Ineffective assistance of appellant counsel.
Supporting Facts: Appellant denial of ineffective assistance of counsel occurred when counsel failed to argue trial counsel defective representation for failure to object to appellant's illegal sentence in case number 2003-CR-548, where appellant had not been found guilty by his peers.

**GROUND FOUR**: Ineffective assistance of appellant counsel.
Supporting Facts: Appellant counsel failed to file a limited remand hearing in accordance with appellant Rule 9 after being informed the records did not accurately reflect the trial court proceeding in the material.

The first two grounds arose from Kimble's direct appeal and the latter two arose from his Ohio R.App. P. 26(B) application to reopen appeal due to ineffective assistance of appellate counsel.

4:08 CV 1048                                            3

*Timeliness:*

The warden first contends that Kimble's petition filed with the court on April 24, 2008, bearing the date of execution of April 9, 2008 when it was placed in the prison mailing system, [1] was untimely under 28 U.S.C. §2244(d)(1)(A).[2] The burden for this argument falls upon the warden. See *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002).

---

[1] April 9, 2008 serves as the filing date under the prison "mailbox rule" from *Houston v. Lack*, 487 U.S. 266, 270, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). The prison mailbox rule of hypothecating a document's signature date as the filing date has been extended to collateral relief petitions. See *Miller v. Collins*, 305 F.3d 491, 497-498 & n. 8 (6th Cir. 2002)(§2254 petition); *Sanchez-Castelano v. U.S.*, 358 F.3d 424, 425 (6th Cir. 2004) (applying prison "mailbox rule" to motion to vacate under 28 U.S.C. §2255). The habeas application form used by Kimble provided for certification of delivery to prison authorities and that date constitutes its filing date. See *Miller*, 305 F.3d at 497-98.

[2] 28 U.S.C. §2244(d) reads as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

4:08 CV 1048                                                    4

The warden correctly maintains that Kimble's conviction became "final" for purposes of §2244(d)(1)(A) on **January 5, 2007**. The state appellate court issued and journalized its decision for purposes of Ohio R. App. P. 22(E) on Monday, November 20, 2006 (See Respondent's Ex. 16), The 45-day appeal period to file a timely appeal with the Ohio Supreme Court under Ohio S.Ct. Prac. R. II, § 2(A)(1)(a) ended on January 4, 2007.  See Letter dated January 10, 2007 from Office of the Clerk of the Ohio Supreme Court (stating 5:00 p.m. Jan. 4, 2007 was due date) Ex. to Supplemental Traverse, ECF # 10-2; *Williams v. Wilson*, 149 Fed. Appx. 342 (6th Cir. 2005)(1-year period begins to run on expiration of the 45-day period to file an appeal to the Ohio Supreme Court)*; Wilberger v. Carter,* 35 Fed. Appx. 111, (6th Cir. Jan. 18, 2002)(same); and see *Carey v. Saffold*, 536 U.S. 214, 219-20, 122 S.Ct. 2134, 2137-38, 153 L.Ed.2d 260 (2002).  Fed. R. Civ. P. 6(a) applies to federal time computation, so "the day of the act, event, or default from which the designated period of time begins to run shall not be included." *Bronaugh v. Ohio,* 235 F.3d 280, 285 (6th Cir. 2000). Accordingly, the 1-year period of limitation began to run On Friday January 5, 2007.

*Application to reopen did not toll 1-year period:*

The warden correctly argues that when Kimble filed a Ohio R. App. P. 26(B) application to reopen appeal on April 6, 2007, there was no tolling under §2244(d)(2) because that application was dismissed on April 17, 2007 as untimely. (Respondent's Ex. 23).  Kimble had 90 days in which to timely file that application to reopen his state appeal pursuant to Ohio R. App. 26(B), and his application was filed over 4 months after the state appellate court's journalization of decision on November 20, 2006. (See Respondent's Ex. 18, 22 ).  An application to reopen appeal is a matter of state collateral post-conviction review. See *Lopez v. Wilson*, 426 F.3d 339 (6th Cir. 2005), *cert.*

4:08 CV 1048                                                    5

*denied,* 547 U.S. 1099 (2006); *Morgan v. Eads*, 104 Ohio St.3d 142, 818 N.E.2d 1157 (2004). As a matter of state post-conviction review it must be "properly filed" under §2244(d)(2) and this includes being timely filed. See *Artuz v. Bennett*, 531 U.S. 4, 8, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000)("[A]n application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe for example the form of document, *the time limits upon its delivery*, the court and office in which it must be lodged and the requisite fee.(emphasis supplied, footnote omitted)") ; *Pace v. DiGuglielmo*, 544 U.S. 408, 414-17, 125 S.Ct. 1807, 1813-15,161 L.Ed.2d 669 (2005)(State postconviction petition rejected by the state court as untimely is not "properly filed" within the meaning of § 2244(d)(2)); *Allen v. Siebert*, 552 U.S. 3, 128 S.Ct. 2, 3, 169 L.Ed.2d 329 (2007)(same); *Vroman v. Brigano,* 346 F.3d 598, 603 (6th Cir. 2003). The state courts are the arbiter of the state's time rules. *Vroman ,*346 F.3d at 603; *Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001). Consequently, dismissal of Kimble's post-conviction application to reopen appeal for untimeliness negates its inclusion for tolling under §2244(d)(2). See *Raglin v. Randle*, 10 Fed. Appx. 314, 315 (6th Cir. May 8, 2001); *Gilcreast v. Voorhies*, 2007 WL 152158 (N.D. Ohio); *Crosby v. Hudson*, 2007 WL 838062 (N.D. Ohio); *Tomlinson v. Hudson*, 2007 WL 1831135 (N.D. Ohio).

*Motion for delayed appeal to Ohio Supreme Court did toll 1-year period:*

The warden does concede that Kimble's motion for delayed appeal to the Ohio Supreme Court filed on June 27, 2007 did toll the running of the 1-year period until August 29, 2007 when the Ohio Supreme Court denied leave to file a delayed appeal. Under the state procedural mechanism, the Ohio Supreme Court has jurisdiction over timely appeals within 45 days of entry

4:08 CV 1048                                                  6

of the state appellate court's decision. See Ohio S.Ct Prac.R. II §2(A)(1). The Ohio Supreme Court may, however, in its discretion take jurisdiction over untimely felony appeals upon motion for leave to file a delayed appeal pursuant to Ohio S.Ct.Prac.R. II §2(A)(4)(a). The 1-year period is stopped pending the Ohio Supreme Court's review of the motion for delayed appeal under 28 U.S.C. §2244(d)(2), as a matter of postconviction or collateral review. See *DiCenzi v. Rose*, 452 F.3d 465, 468 (6th Cir. 2006). According to the warden, the 1-year period then continued to run until it expired over the remaining 192 days (plus 1 extra day since March 9, 2008 fell on a Sunday) until March 10, 2008, rendering the present petition, with its April 9, 2008 execution date, untimely.

*No additional 90 days for certiorari to U.S. Supreme Court:*

In the wake of *DiCenzi v. Rose*, and the decision by the U.S. Supreme court in *Lawrence v. Florida,* 549 U.S. 327, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007), Kimble should not receive the advantage of tolling of 90 days for *certiorari* review by the U.S. Supreme Court from the Ohio Supreme Court's denial of the motion for delayed appeal, even when no such review is sought because a motion for delayed appeal before the Ohio Supreme Court is a form of postconviction or collateral review governed by §2244(d)(2).

The view that delayed appeals in Ohio courts were postconviction or collateral matters has been expressed consistently from *Searcy v. Carter*, when the Sixth Circuit first examined the arguments whether a motion for delayed appeal to the Ohio Supreme Court fell under §2244(d)(1)(A) or §2244(d)(2) in a published opinion (See *Id.,* 246 F.3d 515, 519 (6th Cir. 2001), to *DiCenzi*'s reinforcement of this position that *Searcy* had held that "motions for delayed appeal

4:08 CV 1048                                                       7

toll the AEDPA statute of limitations under 28 U.S.C. §2244(d)(2), but that such motions are *not* part of the direct appeal for the purposes of 28 U.S.C. §2244(d)(1)(A)(emphasis in original)." *Id.*, 452 F.3d at 468. [3]

*DiCenzi* , however, went on to find that pursuant to *Abela v. Martin*, 348 F.3d 164 (6th Cir. 2003)(*en banc*), when the motion for delayed appeal is granted, then the period tolls an additional 90 days. *Id.*, 452 F.3d at 469. *Abela* had held that the 90 days period for seeking *certiorari* to the U.S. Supreme Court applied to postconviction matters under §2244(d)(2). See *Abela*, 348 F.3d at 172-73. This conclusion was later effectively overturned by the U.S. Supreme Court in *Lawrence*, which held there was no additional time for filing a potential petition for *certiorari* to the U.S. Supreme Court is imputed under §2244(d)(2). See *Lawrence v. Florida,* 549 U.S. at 334, 127 S.Ct. at 1084 ; *Allen v. Bell,* 250 Fed.Appx. 713, 715 n. 1, 2007 WL 2962586 (6th Cir. Oct. 10, 2007); *Henderson v. Luoma,* 302 Fed.Appx. 359, 362, 2008 WL 5046414 (6th Cir. Nov. 26, 2008).

This should be the end of the matter, but in *Jimenez v. Quarterman*, -U.S. -, 129 S.Ct. 681, 172 L.Ed.2d 475 (2009), the issue of delayed appeal was addressed under §2244(d)(1)(A), not §2244(d)(2), and held that when a state appellate court grants a motion for delayed appeal, the 1-

---

[3] Categorizing appellate procedures has not always been so consistent. The term "direct review" is undefined and it has proven in another instance to be immensely difficult to apply. In the debate over where to categorize Ohio's applications to reopen appeal under Ohio R. App. P. 26(B), the Sixth Circuit began with the position that Appellate Rule 26(B) is part of the direct appeal, not a collateral matter, and such motions are governed by §2244(d)(1)(A). See *Bronaugh v. Ohio*, 235 F.3d 280, 286 (6th Cir. 2000); *White v. Schotten*, 201 F.3d 743, 752 (6th Cir. 2000), *cert. denied* 531 U.S. 940 (2000). The debate within the Sixth Circuit has evolved from treating Ohio R.App. P. 26(B) as a "phase" of direct appeal in *White v. Schotten*, to the final word on this matter in *Lopez v. Wilson*, 426 F.3d 339 (6th Cir. 2005) (en banc), which overruled *White* to hold that an application to reopen appeal is not part of the direct appeal, but is a collateral or postconviction matter governed under §2244(d)(2). See *Lopez*, 426 F.3d at 345-50.

4:08 CV 1048                                                    8

year period of §2244(d)(1)(A) is reset. Kimble's motion for delayed appeal was denied, so under *Jimenez*, his conviction remained "final." See *Id.*, 129 S.Ct. at 686-87. However, the U.S. Supreme Court's analysis of the delayed appeal as part of the direct appeal warrants some discussion. If motions for delayed appeal are categorized as part of the direct appeal process this results in 90 days being added to AEDPA's "clock" under §2244(d)(1)(A), just as it formerly had been in accord with *DiCenzi* under its erroneous interpretation of §2244(d)(2). See *Clay v. U.S.*, 537 U.S. 522, 528 n.3, 123 S.Ct. 1072, 1077 n. 3, 155 L.Ed.2d 88 (2003); *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000). An additional 90 days computes to June 9, 2008, and under this date Kimble's petition would be timely.

The U.S. Supreme Court in *Jimenez* stated simply, "The parties agree that the statutory provision that determines the timeliness of petitioner's habeas petition is 28 U.S.C. § 2244(d)(1)(A)." *Jimenez v. Quarterman*, 129 S.Ct. at 685 (2009). The U.S. Supreme Court did not answer the question whether delayed or out-of-time appeals are categorized as direct appeals or collateral matters, nor did the U.S. Supreme Court create a formula for the lower courts to apply in resolving this issue. For that matter, *Jimenez* did not conclusively categorize out-of-time Texas appeals as direct appeals. The U.S. Supreme Court avoided setting out a rule in *Jimenez* that motions for delayed appeal from conviction are to be uniformly treated as part of the direct appeal process. Accordingly, *Jimenez* did not close the debate over whether a delayed or out-of-time appeal is a "phase" of the direct appeal or a postconviction or collateral matter. Nor did it close the debate over whether to use federal common law or deference to state law in this analysis.

4:08 CV 1048                                                                  9

From the perspective of federal case law there is no uniformity on where to categorized out-of-time or delayed appeals or how to make this assessment.  Beginning with the originating district court decision in *Jimenez* , that court favored a uniform federal common law approach. See *Jimenez v. Quarterman,* 2006 WL 5486932, at * 4 (N.D.Tex.)("[T]he 'AEDPA, not state law, determines when a judgment is final for federal habeas purposes." *Foreman v. Dretke*, 383 F.3d 336, 339 (5th Cir.2004) (citing *Roberts v. Cockrell*, 319 F.3d [690] at 694[5th Cir. 2003)])").  However, this appears to be an overextension of *Roberts v. Cockrell*. Compare *Salinas v. Dretke*, 354 F.3d 425, 430 n.5 (5th Cir. 2004)(*Roberts* dealt with narrow issue of finality with reference to mandate of state appellate court, and federal court defers to state law). Generally, federal courts do look to the state court nomenclature in deciding where to categorize a delayed or out-of-time appeal as either direct appeals or postconviction matters. [4]  *Searcy* referred to Ohio case law. [5]  However, it accepted the

---

[4] "In determining whether a particular state procedure constitutes part of the "direct review" process for purposes of § 2244(d)(1)(A), a federal court must defer to underlying state court characterization of the procedure. See *Bridges v. Johnson*, 284 F.3d 1201, 1202 (11th Cir.2002) (deferring to Georgia state court determination of whether particular filing was part of direct appeal process under Georgia law); *White v. Schotten*, 201 F.3d 743, 752-53 (6th Cir.2000) (reaching same conclusion in case filed by Ohio state prisoner). This principle is consistent with "AEDPA's goal of promoting 'comity ... and federalism.' " *Carey v. Saffold*, 536 U.S. 214, 122 S.Ct. 2134, 2138, 153 L.Ed.2d 260 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 364, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000))."

*Orange v. Calbone,*  318 F.3d 1167, 1170 (10th Cir. 2003); and see *Frasch v. Peguese ,* 414 F.3d 518, 522-23 (4th Cir. 2005)(citing *Orange*).
.

[5] "Recently, the Ohio Court of Appeals found that prior case law was unclear on whether 'delayed appeals' should be treated as 'direct appeals.' See *State v. Bird*, 138 Ohio App.3d 400, 741 N.E.2d 560, 563 (2000). The court concluded that "the use of the term 'direct appeal' in [the statute governing petitions for post-conviction relief] does not necessarily include delayed appeals.' *Id*. More importantly, the court found that the running of the statute of limitations for filing petitions for post-conviction relief could not be 'indefinitely delayed' until the filing of a delayed appeal. See *id*. at 562. The court noted that "to hold otherwise would nullify the obvious legislative intent [ ] to place time limitations on bringing postconviction petitions.' *Id*."

*Searcy v. Carter,*  246 F.3d at 519.

4:08 CV 1048                                          10

holding from *Raynor v. Dufrain*, 28 F.Supp.2d 896 (S.D.N.Y.1998), which was more in line with the federal common law approach.

Because the U.S. Supreme Court in *Jimenez* did not categorize delayed appeals as either part of the direct appeal process or as postconviction or collateral matters, *Searcy* and *DiCenzi* continue to set out the applicable category in cases decided by the district courts within the Sixth Circuit. Accordingly, until either the U.S. Supreme Court or Sixth Circuit holds otherwise, this court must be guided by *DiCenzi* and *Searcy* to find that Kimble's motion for delayed appeal to the Ohio Supreme Court only tolled the 1-year period while it was actually pending as a postconviction matter governed by §2244(d)(2). This petition for federal habeas corpus dated April 9, 2008 was "filed" after March 10, 2008, and is consequently untimely. [6]

*Procedural Default:*

Kimble did not pursue a timely appeal from the state appellate court's affirmance of his convictions and sentence and failed to appeal the denial of his Ohio R. App. P. 26(B) application to reopen appeal. See *State v. Kimble*, 2006 WL 3350483 (Ohio App. 11 Dist.), *motion for delayed appeal denied*, 114 Ohio St. 3d 1504 (Table Aug. 29, 2007); and see April 17, 2007, Denial of Application for Reopening Appeal, Respondent's Ex. 23.) The warden correctly argues that Kimble's untimely appeal to the Ohio Supreme Court and the denial of his application for reopening resulted in a procedural defaults barring federal review.

---

[6] Kimble also argues for equitable tolling. However there is no reason to also delve into additional tolling on this basis since Kimble has procedurally defaulted on all four grounds.

4:08 CV 1048                                        11

*Effect of Denial of Delayed Appeal:*

An unexplained decision from the Ohio Supreme Court, as confronts Kimble, denying leave to file an untimely appeal is presumed to enforce any applicable procedural bar. See *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004), *cert. denied*, 543 U.S. 989 (2004); *Smith v. State of Ohio Dept. of Rehab and Corr.*, 463 F.3d 426, 431-32 (6th Cir. 2006). The warden has included a copy of the Ohio Supreme Court's docket in Case No.2007-1153 (Respondent's Ex. 26) which shows that Kimble' motion for delayed appeal was denied on August 29, 2007. Denial of an Ohio S.Ct. Prac. R. II §2(A)(4)(a) motion for leave to file delayed appeal is not a ruling on any claim included within the motion for leave, and is an "adequate and independent" basis for procedural default consistent with *Maupin v. Smith*,⁷ which can foreclose federal habeas review. See *Bonilla*, 370 F.3d at 497; *Smith v. State of Ohio Dept. of Rehab and Corr.*, 463 F.3d 426, 431-32 (6th Cir. 2006).

*Kimble did not have "Cause" to Excuse the Procedural Default of the State Appeal:*

Generally, "[w]hen a 'state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred

---

⁷ To assess whether a habeas petitioner has procedurally defaulted on his claim the federal courts within the Sixth Circuit must consider the following four factors from *Maupin v. Smith*, 785 F.2d 135 (6th Cir.1986):

(1) whether there is a procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with this rule;
(2) whether the state courts actually enforced the state procedural sanction;
(3) whether the state procedural rule is an adequate and independent state ground to foreclose federal relief; and if so,
(4) whether the petitioner has established cause for his failure to follow the rule and actual prejudice from the alleged constitutional error.

See *Maupin v. Smith*, 785 F.2d at 138 (6th Cir. 1986)(citations omitted); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001); *Beuke v. Houk,* 537 F.3d 618, 630 (6th Cir. 2008).

4:08 CV 1048                                              12

unless the prisoner can demonstrate cause for the default and actual prejudice ... or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Bonilla v. Hurley*, 370 F.3d at 497, quoting *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991); and see *Edwards v. Carpenter*, 529 U.S. 446, 451-52, 120 S.Ct. 1587, 1592, 146 L.Ed.2d 518 (2000); *House v. Bell*, 547 U.S. 518, 536, 126 S.Ct. 2064, 2076, 165 L.Ed.1 (2006); *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1971).

"Cause" is a legitimate excuse for the default and "prejudice" is the actual harm resulting from the alleged constitutional violation. *Jamison v. Collins*, 291 F.3d 380, 386 (6th Cir. 2002). To establish "cause" a petitioner must present a substantial reason based on "some objective factor external to the defense ." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986) ; *Strickler v. Greene*, 527 U.S. 263, 283 n. 24, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

The warden relies on Kimble's reasons for delay from his motion for leave to file delayed appeal that Kimble was short of funds for postage. (Respondent's Ex. 18). Kimble, though, in his traverse filed in this court provides a much more elaborate situation where he claims that he timely mailed a notice of appeal on January 3, 2007, but this was returned because state prison personnel removed his affidavit of indigency and copy of the appellate court's decision. Upon resubmission on January 31, 2007, he was then advised by the clerk that his notice of appeal was received on February 6, 2007, and that Kimble would now need to seek a delayed appeal. Prison mail room delay is an external factor which caused untimely filing, and this constitutes "cause." See *Maples*

4:08 CV 1048                                        13

*v. Stegall,* 340 F.3d 433, 439 (6th Cir.2003). Presumably, the alleged mail tampering by prison personnel would also constitute cause.

Kimble's other excuse is that his attorney did not promptly inform him of the state appellate court's November 20, 2006 opinion until December 12, 2006.  However, this would still allow for timely filing on or before January 5, 2007, and does not constitute "cause" to excuse the delay. See *Turner v. Smith*, 2009 WL 799041, at *9 (S.D. Ohio)

The undersigned finds it disingenuous for Kimble to explain his delay to the Ohio Supreme Court as due to inadequate funds for mailing, but  provide a different account to this court. Both the Ohio Supreme Court and this court share a common concern for the reason for delay and it violates state and federal comity for a prisoner to give one account to the state court and provide another explanation to the federal court. Where the state record sets out the explanation for delay provided with the motion for delayed appeal, then that explanation will be the basis for the federal court's resolution of whether there is  "cause" to excuse the delay.

Delay due to the lack of sufficient funds to pay for postage is not "an objective factor external to the defense or an external impediment." *McCree v. Hudson*, 2009 WL 936953 at *6 (N.D. Ohio)(quoting *Murray v. Carrier,* 477 U.S. at 488).  It is especially not the case here where Kimble admitted that funds would be made available to indigent prisoners. (See "Informal Complaint Resolution, Ex. 18 p. 7). See *Martin v. Vannatta*, 175 Fed. Appx. 45 (7th Cir. March 30, 2006)(prisoner did not show "cause" due to inadequately explaining why he did not use state

4:08 CV 1048                                                14

provided postage). Kimble's explanation to the Ohio Supreme Court in his attached grievance was that he was not "indigent" as defined by prison policy but had inadequate funds at the time because he had not yet received his monthly state pay. Kimble's lack of budgeting is not an objective external factor beyond his control, and "[a] little advance planning would have solved this problem." See *Martin*, 175 Fed. Appx. at 46. [8] Further, the warden points out that Kimble's motion for delayed appeal was not submitted until June 2007, and Kimble does not explain the five month delay to accumulate sufficient funds for postage.

*Kimble Procedurally Defaulted his Claims of Ineffective Assistance of Appellate Counsel:*

As the warden argues, Kimble's procedural default on Grounds Three and Four, which arose from Kimble's Ohio R. App. P. 26(B) application to reopen appeal due to ineffective assistance of appellate counsel, bars federal review. In this non-capital matter, Kimble's failure to timely file his Ohio R. App. P. 26(B) application to reopen within 90 days of the appellate decision without good cause to excuse the delay is an adequate and independent state rule for the state courts to deny review and forecloses federal habeas review. See *Parker v. Bagley*, 543 F.3d 859, 862 (6th Cir. 2008); *Scuba v. Brigano*, 527 F.3d 479, 488 (6th Cir. 2007); *Monzo v. Edwards*, 281 F.3d 568, 577-78 (6th Cir. 2001).

---

[8] "Martin contends that he meets this description because his indigency was beyond his control, but as the district court held, he did nothing to show that he was without funds at the time. Martin argues that commissary purchases entail a two-week waiting period, so even if he could have afforded postage his appeal would have been untimely. A little advance planning would have solved this problem, not to mention the fact that Martin nowhere explains why his weekly allocation of free stamps was insufficient to mail his appeal."

*Martin v. Vannatta,* 175 Fed.Appx. 45, 46, 2006 WL 906441 (7th Cir. March 31, 2006).

4:08 CV 1048                                        15

This procedural default is further compounded by lack of an appeal to the Ohio Supreme Court from the state appellate court's denial resulting in a lack of "fair presentation" of this issue to the State's highest court. "Fair presentation of an issue requires that a petitioner give state courts a full opportunity to resolve any constitutional issues by involving 'one complete round' of the state's appellate review system."  *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003), quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). A failure to fairly present the federal grounds to the state's highest court constitutes an adequate and independent state procedural rule barring habeas review.  See  *Leroy v. Marshall*, 757   F.2d 94, 99 (6th Cir. 1985), *cert. denied*, 474 U.S. 831 (1985); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *Lordi v. Ishee*, 384 F.3d 189, 194 (6th Cir. 2004), *cert. denied* 546 U.S. 821 (2005).

*Kimble cannot show actual innocence:*

Kimble obviously cannot claim fundamental miscarriage of justice which resulted in the conviction of an actual innocent.  See *Schlup v. Delo*, 513 U.S. 298, 320-322, 115 S.Ct. 851, 863, 130 L.Ed.2d 808 (1995); *Edwards v. Carpenter*, 529 U.S. 446, 451-52, 102 S.Ct.1587, 1590-92, 146 L.Ed2d 518 (2000); *House v. Bell*,  547 U.S. 518, 521-522, 536-37, 126 S.Ct. 2064, 2068, 2076, 165 L.Ed.1 (2006).  He admitted  his crimes in open court.

Kimble has in his recently filed affidavits stated that his plea was coerced and "that the trial judge used the Suppression Hearing in [companion ] case no. 04-CR-525 as leverage to allow trial counsel and myself time [to] think about our decision to either go to trial or plea."(Kimble  Aff. ECF # 18). If his affidavit and the supporting affidavit from Karean Bryant are to support a claim of

4:08 CV 1048                                        16

actual innocence, they miss the mark. A "fundamental miscarriage of justice" results from the conviction of one who is actually innocent. See *Dretke v. Haley*, 541 U.S. 386, 393, 124 S.Ct. 1847, 1852, 158 L.Ed. 2d 659 ( (2004); *Murray v. Carrier*, 477 U.S. 478, 495-96, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). To succeed, Kimble needs to present, "allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial." *Schlup*, 513 U.S. at 324; *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 427 (6th Cir. 2003). "A prototypical example of 'actual innocence' in a colloquial sense is the case where the State has convicted the wrong person of the crime." *Sawyer v. Whitley*, 505 U.S. 333, 340, 112 S.Ct. 2514, 2519, 120 L.Ed.2d 269 (1992). "In *Schlup*, the [ Supreme] Court adopted a specific rule to implement this general principle. It held that prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell,* 547 U.S. at 536-37*,* 126 S.Ct. at 2076 -2077. Kimble is solely focused on withdrawal of his guilty pleas- not actual innocence with new evidence to convince a reasonable juror that he did not possess drugs or tamper with evidence.

### *CONCLUSION AND RECOMMENDATION*

Federal review of this petition is foreclosed both by the untimeliness of the petition as gauged under 28 U. S. C. §2244(d) and by procedural bars. These procedural defaults resulted from both the state courts' application of adequate and independent state procedural rules, and Kimble's lack of an appeal from the state appellate court's denial of the application to reopen appeal on the basis of

4:08 CV 1048                                              17

ineffective assistance of appellate counsel, combined with no demonstration of "cause and prejudice" or actual innocence to excuse the procedural defaults. Accordingly, Kimble has not demonstrated that he is in custody pursuant to a judgment of the state court which resulted in a decision that was contrary to or involved an unreasonable application of Federal law as determined by the Supreme Court of the United States or was the result of a decision based on an unreasonable interpretation of the facts in light of the evidence in the State court proceeding.  See 28 U.S.C. §2254(d)(1) and (2).  There has been no demonstrated need for an evidentiary hearing.  It is recommended that this application for habeas corpus be denied.

                                              s/James S. Gallas                    
                                           United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: June 26, 2009